UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lindsey Rickard,

      Plaintiff,

v.                                                                                        Case No. 15-CV-3224 (JNE/KMM)
                                                                                          **ORDER**

Hennepin Home Health Care, Inc.,

      Defendant.

Plaintiff Lindsey Rickard is a former employee of Defendant Hennepin Home Health Care, Inc. ("HHHC"). She alleges HHHC failed to pay her overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and retaliated against her in violation of the FLSA, 29 U.S.C. § 215(a)(3), and the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932 (2016). The matter is before the Court on HHHC's Motion for Summary Judgment on all three of Rickard's claims. For the following reasons, the Motion is granted.

## I. BACKGROUND

Rickard was employed by HHHC as an Independent Living Specialist ("ILS") from December 16, 2013 to February 16, 2015. (Affidavit of Amelia Mata ("Mata Aff.") ¶ 3, ECF No. 22.) She assisted mentally-ill and elderly clients with everyday living skills and tasks such as budgeting, errands, and medical appointments. (*Id.*) Rickard was required to travel to and from clients' homes. (*Id.*) She carried client files in her car for each appointment. (Deposition of Lindsey Rickard ("Rickard Dep.") 104:2-4, 258:4-7, ECF No. 20-1.)

Rickard was full-time and paid hourly. (Mata Aff. ¶ 5; Rickard Dep. 144:25-145:2.) She was in charge of her own schedule and made appointments with her clients according to their availability. (Rickard Dep. 34:9-35:8.) HHHC expected Rickard to schedule 32-35 hours of

1

appointment time with clients each week, which would be billed to an insurance company or government payer. (Mata Aff. ¶ 8.) In addition to the 32-35 hours of billable time each week, she was allowed to report 5-8 hours of time for administrative tasks and inter-appointment travel. (*See id.*) The administrative tasks could be completed at any time each day. (*See* Deposition of Susan Baxter ("Baxter Dep.") 38:4-8, ECF No. 29-3.)

ILSs record their hours on weekly timesheets, which are turned in to HHHC. (Mata Aff. ¶ 4.) During the approximately one year and two months Rickard worked for HHHC, she turned in sixty-one timesheets. (*See id.*, Ex. 1, ECF Nos. 23, 24, 25.) It is undisputed that Rickard reported overtime on two timesheets and was paid for the reported overtime. (Rickard Dep. 67:7-9.) Some weeks, Rickard used accrued paid time off (PTO) to make up for billable time under 32 hours. (*See id.* at 100:12-23.) Rickard now claims that she worked an average of 52 hours each week. (Declaration of Lindsey Rickard ("Rickard Decl.") ¶ 3, ECF No. 30.)

The week of November 16, 2014, Rickard recorded overtime without seeking prior authorization from her supervisor, in violation of HHHC's policies. (*See* Mata Aff., Ex. 4, ECF No. 26-2.) She received a corrective action on December 8, 2014, requiring her to obtain permission in the future and to better manage her schedule. (*Id.*) On December 15, 2014, Rickard was issued another corrective action (her third overall). (*See id.*, Ex. 5, ECF No. 26-3.) This third corrective action was issued because Rickard required overtime to complete her work tasks and reported less than 40 hours one week prior. (*See id.*) Rickard's supervisor reasoned that Rickard's fluctuating hours showed Rickard was mismanaging her schedule. (*See id.*) The same day Rickard was issued the third corrective action, she delivered a letter to HHHC to be included in her personnel file. (*See id.*, Ex. 6, ECF No. 26-4.) The letter objected to her corrective action of December 8 and stated that she had been directed to report only up to 40 hours of work each

week, "no matter how much time it actually [took] to complete the required billable hours, travel between appointments, and paperwork/meetings." (*Id.*) She claimed that this timesheet policy violated the law. (*Id.*)

About two months later, on February 16, 2015, Rickard resigned without notice. (*See id.*, Ex. 8, ECF No. 27.) Her resignation letter stated as its reasons HHHC's failure to accommodate Rickard under the Americans with Disabilities Act and unwillingness to address unsafe working conditions. (*Id.*)

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

### A. The FLSA Overtime Claim

Rickard claims she worked overtime and was not compensated, in violation of the FLSA. The FLSA prohibits hourly employment "for a workweek longer than forty hours unless such

employee receives compensation for [her] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. § 207(a)(1). To prevail on an overtime claim, the employee "has the burden of proving that [s]he performed work for which [s]he was not properly compensated." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a)). Where an employer has not kept accurate time records, the evidentiary standard is relaxed, and a plaintiff need only provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. If shown, the burden shifts to the employer to negate the inference. *Id.* at 687-88.

The parties dispute whether the relaxed evidentiary standard under *Mt. Clemens* applies in this case. HHHC collected and stored time records as required by the FLSA and argues that the relaxed standard therefore does not apply. Rickard testified at her deposition that HHHC instructed her to record 40 hours or less each week. (Rickard Dep. 111:6-20, 120:23-121:3.) She argues that the timesheets are consequently inaccurate, and the relaxed standard must be applied. The Court need not decide this issue, however, because even under the relaxed standard, Rickard's evidence is insufficient to show that she worked uncompensated overtime. Therefore, the overtime claim does not survive summary judgment.

       *1. Insufficient Evidence*

HHHC argues that Rickard's evidence is similar to the evidence held insufficient in *Holaway*. In that case, the Eighth Circuit Court of Appeals held that the plaintiff "failed to meet even the relaxed evidentiary standard because he failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked for [the

employer]." *Holaway*, 771 F.3d at 1059. The plaintiff in *Holaway* provided varying estimates of his average work hours each week (ranging from 45 to 70 hours), but did not specifically account for what overtime work had been performed. *Id.* at 1059-60. The plaintiff failed to identify any specific days or weeks in which he worked overtime, check alleged hours worked against business records held by the employer, or take into account paid holidays, vacation days, or days he did not perform services. *Id.* at 1060. He also testified only as to ranges of time he typically spent on various tasks. *Id.* at 1058. In all of this, the plaintiff failed to provide a meaningful explanation of how he arrived at a final average of 60 hours worked per week. *Id.* Thus, the Eighth Circuit affirmed the grant of summary judgment for the employer because the evidence "provide[d] no details which would allow a jury to determine [the plaintiff] worked beyond forty hours in any specific week of his employment." *Id.* at 1060.

Rickard's evidence exhibits many of the same qualities that rendered the evidence insufficient in *Holaway*. She generally declares that she worked at least 52 hours per week, on average. (Rickard Decl. ¶ 3.) Rickard seeks overtime pay for fifty-three of the sixty-one weeks she worked for HHHC. (*See* Plaintiff's Answers to Defendant's Interrogatories (Set One), Nos. 8, 16, ECF No. 20-2.) This fifty-three week figure excludes weeks with holidays, but does not exclude weeks she took PTO. (*See id.*) In fifteen of her sixty-one timesheets, Rickard claimed PTO to make up for billable time under 32 hours. (*See* Mata Aff., Ex. 1, ECF Nos. 23, 24, 25.) She testified that some weeks she claimed PTO, she did not work more than 40 hours. (*See* Rickard Dep. 65:8-14, 66:5-11.) However, Rickard includes these weeks in her estimates. As in *Holaway*, this over-inclusivity undermines the sufficiency of her overtime evidence.

Rickard also provided only general estimates as to how frequently she performed certain tasks and how much time she spent performing these tasks. (*See, e.g.*, Rickard Dep. 72:2-16,

74:5-13 (describing new opens and action plans).) Rickard testified some tasks were performed irregularly, and she provided only general ranges of the time needed to complete some of the tasks. (*See id.*) She made blanket statements such as, for example, that she never took any of her reported lunch breaks. (*See id.* at 199:5-22.) When asked about a specific week in her deposition, Rickard claimed she worked 52 hours, but was unable to describe what tasks she performed or how much time she spent on each task that week. (*See id.* at 206:4-209:13.) When asked about two other weeks, Rickard testified she worked only 45 hours and was similarly unable to specify—for these or any other weeks—the tasks she performed. (*See id.* at 234:3-8, 239:24-240:5.)

Rickard's overtime evidence and 52 hour general estimate echo the vague and contradictory evidentiary case in *Holaway*. Rickard has provided no meaningful details that would enable a jury to determine how much, if any, overtime she worked for any specific week. Rickard counters that she is not held to precision in estimating and proving her overtime. While Rickard is not required to prove the "precise extent of uncompensated work," she cannot rely on "unsupported estimations" of unpaid overtime. *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406-407 (8th Cir. 2013).

   2. *Inclusion of Non-compensable Time in Estimates*

HHHC also compares Rickard's evidence to the evidence in *Dalton v. Hennepin Home Health Care, Inc.*, which concerned an FLSA overtime claim against HHHC by another ILS. *See* No. 15-CV-1566, 2016 WL 4402801, at *1 (D. Minn. Aug. 16, 2016). HHHC argues that Rickard, like the plaintiff in *Dalton*, includes non-compensable time in her estimates and that this inclusion undermines the sufficiency of her overtime evidence. The plaintiff in *Dalton* failed to offer evidence of hours worked in any specific week and asserted she worked at least 50 hours

6

each week on average, but that the overtime varied. *Id.* at *2. The plaintiff included non-compensable time, such as time spent commuting, in her overtime estimates. *Id.* Applying *Holaway*, the Court held the plaintiff's overtime evidence was insufficient. *Id.* The Court granted summary judgment to HHHC. *See id.*

As in *Dalton*, Rickard includes in her 52 hour estimate an "unknown, yet presumably substantial, number of hours for her commute from and to her home." 2016 WL 4402801, at *2. Time spent commuting is not compensable under the FLSA because it is excluded by the Portal-to-Portal Act ("PPA"). *See* 29 U.S.C. § 254(a). Under the PPA, employee travel to and from work is usually not compensable. *See id.*; *see also* 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime."). Rickard's travel (1) from home to her first client appointment of the day and (2) travel to home from her last appointment (together, her 'commute') is excluded by the PPA. That Rickard brought client files with her does not alter this fact. *See Singh v. City of New York*, 524 F.3d 361, 369 (2d Cir. 2008); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289-90 (10th Cir. 2006); *see also Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 413 (5th Cir. 2011) (unpublished).

In *Singh*, the Second Circuit Court of Appeals applied the predominant benefit test to determine if carrying a briefcase rendered a commute compensable. *See* 524 F.3d at 367-69. The court considered whether carrying the briefcase constituted a substantial burden and placed more than minimal restrictions on the use of the employee's commute time. *See id.* at 368. The Second Circuit asked whether the employer was the predominant beneficiary of the commute time. *See id.*; *cf. Herman v. Rich Kramer Constr., Inc.*, 163 F.3d 602 (8th Cir. 1998) (unpublished table opinion) (appearing to apply the predominant benefit test to determining whether commute time is compensable). The court held that merely carrying a briefcase during a commute did not

render the commute compensable. *See Singh*, 524 F.3d at 368. As in *Singh*, Rickard's transportation of client files for the day was a minimal burden. (*See* Rickard Dep. 223:7-11.) And there is no evidence that HHHC placed more than minimal restrictions on Rickard's commute while carrying files. Therefore, Rickard's commute travel was not predominantly for the benefit of HHHC, and her commute time is not compensable in itself.

If commute travel takes place within a continuous workday, which begins and ends with principal activities, then it is compensable. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); 29 U.S.C. § 254(a); 29 C.F.R. § 785.38. Rickard argues that because she started and ended each day with administrative tasks that should qualify as principal activities, her commute time is compensable as falling within a continuous workday. HHHC did not require Rickard to perform her administrative tasks at any particular time during the day, however, so the tasks do not begin and end the continuous workday. *See, e.g.*, *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 360-61 (2d Cir. 2011); *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1060-61 (9th Cir. 2010). Rickard's inclusion of non-compensable commute time in her estimates adds to the insufficiency of her overtime evidence. *Dalton v. Hennepin Home Health Care, Inc.*, No. 15-CV-1566, 2016 WL 4402801, at *2 (D. Minn. Aug. 16, 2016).

Rickard also includes in her estimates time spent on call. (Rickard Dep. 226:20-227:17.) In order for on-call time to be compensable, the employee must be engaged to wait, as opposed to waiting to be engaged. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944); 29 C.F.R. § 785.14 (citing *Skidmore*). Compensable on-call time is that which is "predominantly for the benefit of the employer," whereas an employee is under few restrictions during non-compensable on-call time. *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). The central question is whether

"conditions imposed by an employer restrict the employee from using the time for personal pursuits." *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916 (8th Cir. 1991); 29 C.F.R. § 785.17. Rickard was not engaged to wait during normal business hours; she was only required to be available for clients on weekdays between the hours of 8:00 AM and 5:00 PM, and she was given control over her own schedule. (Mata Aff. ¶ 5.) Rickard testified she was on call every day starting at 8:00 AM, even if she did not have a client until later in the day and was not completing any tasks. (*See* Rickard Dep. 215:3-20.) During this time, she had the ability to engage in personal activities with no known restrictions other than being available for appointments. (*See id.* at 215:11-20.) Therefore, Rickard's mere availability from 8:00 AM to 5:00 PM every weekday was not compensable. *See Reimer*, 258 F.3d at 724-26 (finding that on-call time was not compensable when nurses had the flexibility to pursue personal activities off-site, but could not drink and needed to be reachable and within 20 minutes of the employer); *St. John v. Sw. Bell Tel. Co.*, 70 F.3d 118 (8th Cir. 1995) (unpublished table opinion) (holding that on-call time was not compensable when employees were to be "reasonably available," but were otherwise free to engage in personal activities); *see also Arthur v. K. D. Emrick Well Servicing Co.*, 209 F. Supp. 491, 492-94 (E.D. Okla. 1962) (determining that time spent being available for work during specified hours was not compensable when the only restriction was that the employee be reachable). An unknown, yet possibly substantial amount of on-call time is included in Rickard's 52 hour estimate and further renders her evidentiary case insufficient.

    3.  *Inconsistent Overtime Evidence*

Finally, HHHC argues that Rickard's timesheets serve to refute her allegations of overtime spent on administrative tasks. In *Ihegword v. Harris Cnty. Hosp. Dist.*, the Fifth Circuit Court of Appeals affirmed a district court's determination that failure to report a 40 hour

workweek—in other words, the maximum amount of time that could have been reported without going into overtime—refuted allegations of working overtime. 555 F. App'x 372, 375 (5th Cir. 2014) (unpublished). Rickard's timesheets report under 40 hours of work for twenty-six of the sixty-one weeks she was at HHHC. (*See* Mata Aff., Ex. 1, ECF Nos. 23, 24, 25.) Rickard testified she was not allowed to record more than 8 hours of non-billable time, so that in weeks with fewer than 32 hours of billable time, she had to report less than 40 hours. (*See* Rickard Dep. 100:17-23.) However, there are weeks in which she recorded fewer than 8 non-billable hours, but could have recorded more. (*See* Mata Aff., Ex. 1, ECF Nos. 23, 24, 25.) This is not consistent with Rickard's blanket attestation that she worked numerous overtime hours on non-billable tasks, an inconsistency that further undermines the sufficiency of her evidence. *See Ihegword*, 555 F. App'x at 375; *see also Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1060 (8th Cir. 2014) (finding that "contradictory" assertions of hours worked in part undermined the sufficiency of overtime evidence).

Rickard's evidence lacks detail, specificity, and consistency, and her estimates include time that is not compensable under the FLSA. Her unsubstantiated estimates and vague and sometimes contradictory evidence would not enable a jury to determine if she worked beyond 40 hours in any specific week of her employment. Even after granting all reasonable inferences in her favor and applying the relaxed *Mt. Clemens* standard, Rickard has failed to come forward with sufficient evidence to support a reasonable inference that she worked overtime. Therefore, HHHC is entitled to judgment as a matter of law on the FLSA overtime claim.

### B. The FLSA Retaliation Claim

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to [Chapter

29]." 29 U.S.C. § 215(a)(3). FLSA retaliation claims may be proven either by direct evidence or, in the absence of such evidence, using the *McDonnell-Douglas* burden-shifting framework. *See Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013). Rickard asserts she has made out a prima facie claim under the *McDonnell-Douglas* framework. Under this framework, Rickard must first establish a prima facie case of retaliation: (1) she participated in statutorily protected activity, (2) HHHC took an adverse employment action against her, and (3) there was a causal connection between (1) and (2). *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034-35 (8th Cir. 2005). Rickard has failed to establish at least a genuine issue of material fact for each element of her prima facie case.

Rickard argues she engaged in protected activity when she delivered her letter to HHHC complaining that her corrective actions were unfair and that HHHC was violating the law. Communications to employers asserting violations of law, even if informal, constitute protected activity under the FLSA. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011). Because Rickard delivered a letter to HHHC complaining of practices that she believed violated employment laws, she has satisfied the first element of her prima facie retaliation case.

Rickard has not articulated a consistent theory regarding what adverse employment action HHHC took against her. The Complaint alleges that HHHC's refusal "to change its [employment] practices forced [Rickard] out of the workplace." (Compl. ¶ 23, ECF No. 1-1.) In her deposition, Rickard testified that her supervisor engaged in retaliatory behavior by critiquing her work in front of co-workers, requiring Rickard to continue working with a client Rickard deemed unsafe, and forcing Rickard to work without pay (per the unwritten timesheet policies). (Rickard Dep. 31:20-24, 60:9-64:2, 242:13-25.) Although not explicitly argued in Rickard's

motion papers, Plaintiff's counsel asserted at oral argument that Rickard was constructively discharged because HHHC's timesheet policies created intolerable working conditions.

Setting aside the question of whether HHHC's actions constitute adverse employment actions, Rickard has not connected those actions to her protected activity. Rickard experienced the same working conditions before and after she delivered her letter. In her deposition, Rickard testified that before and after her letter, her supervisor made comments about her performance in front of co-workers. (*Id.* at 124:19-23.) The record also shows that Rickard did not have to assist the supposed unsafe client after delivering the letter—but she may still have been assigned to the client. (*Id.* at 241:3-242:5.) Lastly, HHHC's timesheet policies did not change after the letter. The conditions Rickard complains of existed before and after she delivered her letter to HHHC.

Rickard argues that the fact that she was issued the third corrective action on the same day she delivered her letter creates a circumstantial case that shows causation. Rickard did not provide any evidence that the third corrective action was issued after she delivered her letter to HHHC. She declares only that both occurrences happened the "same day," (Rickard Decl. ¶ 8), and her deposition testimony suggests the letter was delivered after the third corrective action, (Rickard Dep. 117:14-119:24). Even if the corrective action occurred later in the day the letter was delivered, closeness in time is generally insufficient on its own to prove causation. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Rickard has not provided any other evidence that would imply causation. She has failed to provide evidence to meet the causation element of her prima facie retaliation case. Therefore, HHHC is entitled to judgment as a matter of law on the FLSA retaliation claim.

### C. The MWA Retaliation Claim

The MWA makes it unlawful for an employer to discharge, threaten, otherwise discriminate against, or penalize an employee when the employee reports, in good faith, a violation of any law to an employer. *See* Minn. Stat. § 181.932, subd. 1(1) (2016). Like FLSA retaliation claims, MWA claims may be proven using the *McDonnell-Douglas* burden-shifting framework. *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Under the MWA, the causation element of the prima facie case may be proven by circumstantial evidence, such as close proximity in time between a protected act and adverse employment action. *See id.* at 633-34 (citing *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn. 1995)). However, a circumstantial case cannot rely on speculation; a factfinder must be able to reasonably infer retaliation from *additional* facts in the case. *Id.* Rickard has failed to show any circumstantial evidence of retaliation other than that she was issued a corrective action the same day she delivered her letter. Her state retaliation claim fails for the same reason as her federal retaliation claim. HHHC is entitled to judgment as a matter of law on the MWA retaliation claim.

### IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant HHHC's Motion for Summary Judgment [Docket No. 17] is GRANTED.
2. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 17, 2016

    s/Joan N. Ericksen
    JOAN N. ERICKSEN
    United States District Judge